[Cite as *In re S.L.*, 2018-Ohio-900.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SHELBY COUNTY

IN RE:

    S.L.,

**CASE NO. 17-17-17**

ADJUDGED NEGLECTED
AND DEPENDENT CHILD.

**O P I N I O N**

[DUSTANY FOREMAN - APPELLANT]

IN RE:

    Su.L.,

**CASE NO. 17-17-18**

ADJUDGED NEGLECTED
AND DEPENDENT CHILD.

**O P I N I O N**

[DUSTANY FOREMAN - APPELLANT]

IN RE:

    Sm.L.,

**CASE NO. 17-17-19**

ADJUDGED NEGLECTED
AND DEPENDENT CHILD.

**O P I N I O N**

[DUSTANY FOREMAN - APPELLANT]

**Appeals from Shelby County Common Pleas Court**
**Juvenile Division**
**Trial Court Nos. 2016-NEG-0044, 2016-NEG-0045 and 2016-NEG-0046**

**Judgments Affirmed**

**Date of Decision:  March 12, 2018**

**APPEARANCES:**

*Jeremy M. Tomb* **for Appellant**

*Anne K. Bauer* **for Appellee**

**WILLAMOWSKI, P.J.**

**{¶1}** Appellant Dustany Foreman ("Foreman") brings this appeal from the judgments of the Court of Common Pleas of Shelby County, Juvenile Division, terminating her parental rights and granting permanent custody of the children to the Shelby County Department of Job and Family Services, Children Services Division ("the Agency"). Foreman claims that the judgments are not supported by the evidence. For the reasons set forth below, the judgments are affirmed.

**{¶2}** In January of 2005, S.L ("Child 1") was born to Foreman and Jerrid Lhamon ("Lhamon"). Su.L ("Child 2") was born to the couple in August of 2007. Sm.L ("Child 3") was then born in July of 2011. In September of 2012, the Children Services Department of Logan County became involved with the family when allegations of neglect surfaced. The children were removed from Foreman's home in October of 2012, and placed in the care of Foreman's mother ("Karean"). The children remained in Karean's care until April of 2013, when they were placed into

a foster home.[1] In May of 2013, the children were placed in a kinship placement. This placement lasted until November 22, 2013, when the children were once again placed in foster care. On June 6, 2014, custody was granted to Lhamon. That case was then closed in October 2014. On November 24, 2013, Karean filed an application for emergency custody of the children which was granted. The children then remained in the custody of Karean until the current case. Tr. 85-88.

{¶3} On August 8, 2016, the Agency received a report that the children were being neglected by Karean. 1Doc. 2, 2Doc 2, and 3Doc 2.[2] While attempting to work with Karean, she made it clear that she would not be cooperating with the Agency. *Id.* On November 1, 2016, the Agency filed a complaint alleging that the children were neglected and dependent, but did not request the removal of the children from the home. 1Doc. 1, 2Doc. 1, and 3Doc. 1. An initial hearing was held on November 17, 2016. 1Doc. 42, 2Doc. 39, and 3Doc. 40. Foreman did not attend that hearing. *Id.* At that time, Karean indicated that she was not willing to cooperate with the Agency or to follow the court orders in order to protect the children. *Id.* The trial court, as a result of Karean's statements, ordered the children to be placed in the temporary custody of the Agency. *Id.* The Agency then filed an initial case plan for the children. 1Doc. 46, 2Doc. 43, and 3Doc. 44. The case plan indicated that Child 1 was placed in a group home due to her unruly behavior, poor

[1] The details of the placement of this case were not included in the record in this case as that case was in Logan County and the current case is in Shelby County.
[2] Child 1's docket will be identified as 1Doc. Child 2's docket will be identified as 2Doc. Child 3's docket will be identified as 3Doc.

grades, and the fact that she was on probation. *Id.* Child 2 and Child 3 were placed in a foster home. *Id.*

{¶4} On December 22, 2016, an adjudicatory hearing was held. 1Doc. 64, 2Doc. 61, and 3Doc 62. Foreman was present for the hearing. *Id.* Foreman stipulated to a finding of neglect and dependency of the children. *Id.* The trial court then found that the children were neglected and dependent and ordered that they remain in the temporary custody of the Agency. *Id.* Following the adjudicatory hearing, Heather Fogt ("Fogt"), the guardian ad litem, gave her card to Foreman and asked her to contact her to set up a home visit. 1Doc. 66, 2Doc. 63, and 3Doc. 64. Fogt wrote a report for the dispositional hearing that indicated that Foreman had not contacted her as of January 19, 2017. *Id.* Fogt recommended that the children remain in the temporary custody of the Agency in her initial report. *Id.*

{¶5} The dispositional hearing was held on January 27, 2017. 1Doc. 69, 2Doc. 66, and 3Doc. 67. Foreman attended the meeting as did Karean. *Id.* The Agency requested that Karean be removed from the case plan due to her refusal to cooperate and the effect her visits were having on the children. *Id.* The trial court then ordered Karean to submit to a drug screen before considering returning the children to her. *Id.* The screen was positive for methamphetamines, opiates, PCP, and oxycodone. *Id.* As a result, Karean was removed from the case plan. *Id.* Due to her refusal to provide the court with an address despite claiming she had a residence, the trial court also refused to allow Foreman to participate in the case

plan until an address was provided. *Id.* The temporary custody of the Agency was continued. *Id.*

{¶6} On February 7, 2017, Child 2 and Child 3 were placed in a second foster home. 1Doc. 73, 2Doc 70, and 3Doc.71. Child 3 had engaged in behavior which required police intervention and the original foster parents could no longer provide the necessary supervision for the children. *Id.* On February 20, 2017, a new case plan was filed. *Id.* This plan did not include any services for Foreman. *Id.*

{¶7} On February 14, 2017, the Agency filed a motion for permanent custody of the children. 1Doc. 79, 2Doc. 75, and 3Doc. 76. The motion indicated that Lhamon had informed the Agency on December 19, 2016 that he did not wish to reunify with his children as he did not feel it would be in their best interest. *Id.* The motion also indicated that Foreman had not provided an address to the court and stated that "she had no objection to her non-inclusion in the case plan." *Id.* Since there were no adults in the case plan, the Agency indicated that the children could not be placed in the legal custody of either parent or any other custodian within a reasonable amount of time. *Id.* A new case plan with the permanency goal of adoption for the children was filed on February 22, 2017. 1Doc. 89, 2Doc. 85, and 3Doc. 86.

{¶8} On March 30, 2017, a review hearing was held and Foreman attended. 1Doc. 96, 2Doc.92, and 3Doc. 93. The trial court noted that Foreman had changed her mind, indicated that she would cooperate with the case plan, and provided an

address. *Id*. The trial court then ordered that Foreman be added to the case plan as a participant. *Id*. The Agency then filed a new case plan on April 3, 2017, with the permanency goal of reunification with Foreman. 1Doc. 95, 2Doc. 91, and 3Doc. 92. The case plan required Foreman to 1) seek a substance abuse assessment within seven days; 2) seek a mental health assessment within seven days; 3) attend at least three Narcotics Anonymous meetings per week and provide proof of her attendance; 4) cooperate with all requested drug screens; 5) seek and obtain employment; 6) seek and maintain safe and appropriate housing; 7) notify the Agency of the identity of any persons who reside with her and get approval from the Agency; 8) sign releases of requested information; 9) comply with all professional recommendations; and 10) attend all team meetings unless otherwise excused. *Id*. No visitation with the children was scheduled for Foreman in the case plan at that time. *Id*. Soon afterwards, the case plan was again amended to reflect that Child 1 had been placed with a foster family after completing the program at the group home. 1Doc. 97, 2Doc. 93, and 3Doc. 94.

{¶9} On April 18, 2017, a case plan review was completed. 1Doc. 98, 2Doc. 94, and 3Doc. 95. The review indicated that Foreman had made insufficient progress on the case plan goals. *Id*. at 3. Foreman had not started any counseling. *Id.* Although Foreman had two negative drug screens, they were at appointments. *Id*. The only truly random screen was positive for cocaine, heroin, and morphine. *Id.* At the time of the review, Foreman had no job and was living with her boyfriend

and his mother. *Id.* Foreman had not attended any team meetings and had not appeared for scheduled appointments for the professional assessments. *Id.* The only task Foreman had completed was that she had signed the requested release forms. *Id.* The summary indicated that four appointments had been scheduled for Foreman to complete her background check without success. *Id.* at 5. The caseworker noted that Foreman appeared to lack motivation to complete the case plan. *Id.* The review of the plan was heard by the trial court and the continued plan was approved on May 18, 2017. 1Doc. 101, 2Doc. 96, and 3Doc. 97. A hearing date of July 21, 2017, was set for the motion for permanent custody. *Id.*

{¶10} On July 14, 2017, Fogt filed a written report. 1Doc. 116, 2Doc. 112, and 3Doc. 113. She indicated that since the March 30, 2017, hearing, she had contact with Foreman through emails, a phone call and one in person contact. *Id.* at 2. On April 5, 2017, Fogt received an email indicating that Foreman had not contacted her because she had been ill. *Id.* Fogt told her she would call to set up a home visit, but when she called, Foreman did not respond. *Id.* On June 20, 2017, Foreman met with Fogt to bring a stuffed animal that Child 1 had left at Karean's and Child 1 wished to have. *Id.* At that meeting Foreman asked for visitation with the children, but was told that it would not be recommended until she had begun working the case plan. *Id.* On July 11, 2017, Foreman indicated to Fogt that she wished to schedule a home visit and wanted to get her children returned to her. *Id.* Fogt indicated in her report that "[i]nstead of working on the case plan that the court

ordered her to follow [Foreman] has disappeared for months at a time only to resurface at court hearings." *Id.* at 4. Based upon her contact with the parties, including the children, and the service providers, Fogt recommended that permanent custody by granted to the Agency. *Id.*

{¶11} On July 21, 2017, the permanent custody hearing began. 1Doc. 123, 2Doc. 118, and 3Doc. 119. However, due to a surgery, Foreman was unable to attend. *Id.* Counsel for Foreman requested a continuance and the trial court granted it. *Id.* The trial court then rescheduled the hearing for August 29, 2017. On the second date, the hearing was held. 1Doc. 135, 2Doc. 130, and 3Doc. 131. At the hearing the following testimony was provided.

{¶12} Ginger Huecker ("Huecker") testified that she was the elementary principal at Jackson Center Schools. Tr. 7. In the 2016-2017 school year, Child 2 and Child 3 attended her school. Tr. 9. Huecker kept an eye on the children because they were frequently tardy or absent, arrived exhausted, did not complete homework, wore clothing that did not fit, were dirty, and arrived having eaten nothing with no idea whether they would be eating in the evening. Tr. 10-11. Huecker testified that she had no interactions with Foreman at all. Tr. 12. After the children were removed from Karean's home, they were different children. Tr. 13. They arrived at school on time, were clean, well-rested, and fed. Tr. 13. The girls were much happier and their academics improved dramatically very quickly. Tr. 14. Huecker also testified that although Child 1 was not enrolled in the elementary,

she knew of her. Tr. 15. Child 1, while living with Karean, had issues with authority and wore clothing that was too revealing and against the school dress code. Tr. 15.

{¶13} McKenzie Lotz ("Lotz") testified that she was a probation officer for the Shelby County Juvenile Court. Tr. 18. Lotz began working with Child 1 after Child 1 was placed on probation for assaulting another juvenile. Tr. 19. Child 1 was already in the custody of the Agency by the time Lotz met Child 1, so her goal was to help Child 1 stay out of trouble. Tr. 20. Lotz described Child 1 as generally pleasant, but defensive. Tr. 20. While on probation, Child 1 showed positive growth as her appearance improved, her grades improved, and her behavior improved. Tr. 21-23.

{¶14} Jodi Knouff ("Knouff") was the counselor for the children. Tr. 26. Knouff testified that Child 1 had behavioral issues, specifically inappropriate sexualized behaviors, acting out, defiance of authority, and poor school performance. Tr.28. This included reports by Child 1 of multiple sexual encounters with adult men while she was 11 years of age. Tr. 37-38. Child 1 also exhibited cutting behavior to cope with the stress in her life. Tr. 39. Child 1 changed dramatically in the care of the Agency. Tr. 30. Child 1 no longer viewed herself as a sexual object with low self-esteem. Tr. 30. Knouff testified that Child 1 appeared to have hope for the future. Tr. 30. Knouff also testified that Child 2 and Child 3 have made progress in their placements. Tr. 32. Knouff's recommendation was

that permanent custody should be granted due to Foreman's lack of participation in the case plan.  Tr. 34-36.

{¶15} Amy Simindinger ("Simindinger") was the liaison between the trial court and the school.  Tr. 43.  She was assigned to work with Child 1 once she entered the court system for her behavior.  Tr. 44.  Child 1 had issues with not attending school, which caused her to have poor grades.  Tr. 45.  Child 1 had also been suspended for school for bring cigarettes to school and was also disrespectful to the teachers.  Tr. 45.  Simindinger also testified that there were issues with Child 1's hygiene and mental attitude. Tr. 46.  Her clothes were not clean or appropriate for school.  Tr. 46.  Her clothing was short, tight, and not typical of what a child her age would be wearing.  Tr. 46.  Child 1's attitude was defensive and defiant.  Tr. 46.  After Child 1 was placed in the group home, her behavior and attitude greatly improved.  Tr. 47-48.  Simindinger also testified that she had attended the majority of the case meetings for Child 1, but Foreman was not present.  Tr. 49.

{¶16} Chuck Wirick ("Wirick") testified that he was the interim chief of police for the Jackson Center Police Department.  Tr. 51.  During 2016, Wirick responded to approximately a dozen calls involving Child 1.  Tr. 51.  The reason for the calls ranged from disorderly conduct, unruliness, up to reports of Child 1 being involved in sexual conduct with adults.  Tr. 52.  Many of the calls were placed by Karean who indicated she could not control Child 1.  Tr. 52.  When he would go to the home, he noted there was minimal furniture and the children were not present.

Tr. 52. After Child 1 was removed by the Agency, he had no additional contact with child 1. Tr. 52.

{¶17} Amy Swaney ("Swaney") testified that she was responsible for supervising the visits the children attended. Tr. 59. Swaney indicated that during the visits with Karean, she frequently had to warn Karean not to whisper false promises to the children. Tr. 61. The visits with Karean were terminated once she was removed from the case plan. Tr. 62. Swaney attended the case meetings, but did not see Foreman at any of them. Tr. 62. Swaney also supervised the one visit that Foreman had with the children. Tr. 64. The visit confused the children and later they became angry when the promises Foreman made to them were not fulfilled. Tr. 64. Swaney indicated that the visit amongst the siblings started out rough, but became positive over time. Tr. 64-65.

{¶18} Robin Woods ("Woods") testified that she was the current foster mother for Child 2 and Child 3. Tr. 75. When they arrived in February of 2017, Child 3 was very combative and threw temper tantrums that lasted for two to three hours. Tr. 75. During these episodes, Child 3 would hit, kick, and scream. Tr. 75. These tantrums occurred several times a week. Tr. 75. Since then, Child 3 has learned other coping methods. Tr. 76. Child 3 now responds to time outs and is generally cooperative. Tr. 76. Child 3 had just begun kindergarten and was going to be tested for ADHD in September. Tr. 76. Child 2 was quiet and reserved at first, but her behavior became more argumentative. Tr. 76. Over time, this has

improved and Child 2 has become a good student who loves school and is happy. Tr. 77. After the visit with Foreman, the children were combative and told Woods that they were not staying there, that they were going home. Tr. 78. The children did not want to listen for a while after that visit. Tr. 78.

{¶19} Alyssa Barlage ("Barlage") testified that she was assigned as the on-going caseworker for the children in November of 2016. Tr. 85. Barlage testified to the history of the family with various courts and children's' services departments. Tr. 85-88. According to Barlage, the children were originally removed from Foreman's care in 2012 due to her drug use. Tr. 86. The children were not supposed to have contact with Foreman. Tr. 89. When this case was opened on August 16, 2016, Foreman had contact with the Agency, but had no more contact until December 22, 2016, at the adjudicatory hearing. Tr. 89. The children were removed from Karean's care because she refused to keep Foreman away from them despite the court order to do so and because she saw no issues with how the children were living. Tr. 89-90. Barlage testified that Lhamon had initially indicated that he wished to surrender his rights, but did not come into the office to do so. Tr. 96. Although Foreman knew of the case in August, she chose not to participate until December of 2016. Tr. 97. Barlage testified that of the case plan requirements there was little to no compliance. Tr. 99. Ten team meetings were held and Foreman attended none of them despite the order to do so. Tr. 99. Foreman repeatedly told Barlage that she was working on the case plan, but never provided any evidence of

doing so. Foreman told Barlage that she was applying for jobs, but the list was always the same and she had not found employment. Tr. 101. She claimed she was looking for housing, but was still living with her fiancé and his mother. Tr. 102. Her fiancé had not been cooperative in allowing a background check. Tr. 104. Foreman had signed the releases, but had not completed any assessments or counseling. Tr. 105. She repeatedly told Barlage that the appointment was in September but provided no specifics. Tr. 105. No parent training had been completed. Tr. 106. A May 4, 2017, drug screen came back positive for cocaine. Tr. 107. Foreman had a negative drug screen on July 28, 2017, but had then refused an August 10, 2017 request for a random test. Tr. 108. Barlage testified that as of the time of the hearing, Foreman had taken no proactive steps to complete the case plan and had made no progress. Tr. 109.

{¶20} Barlage also testified as to how the children were progressing. She testified that she had seen significant changes in all of the children, but specifically in Child 1. Tr. 110. She indicated that Child 1 had not had a cutting incident since May of 2017. Tr. 111. Child 1 told Barlage that she did not wish to live with Foreman, but wanted to be adopted. Tr. 111. All of the children indicated to Barlage that they were now happy. Tr. 113.

{¶21} Fogt testified that she was appointed as the guardian ad litem on November 17, 2016. Tr. 130. Fogt has observed the children together and indicated they have a typical sibling relationship. Tr. 131. Child 1 has started putting forth

an effort to set a good example for Child 2 and Child 3. Tr. 132. Since the children have been placed in the temporary custody of the Agency, their behavior has improved and they are starting to act appropriately for their ages. Tr. 133. Fogt testified that she has met with Foreman two times and received five emails since she was appointed. Tr. 137. From what Fogt has seen, Foreman has not completed anything on the case plan, but she does not have access to all of the information because Foreman did not sign the releases. Tr. 138-39. Fogt testified that she would be concerned with returning the children to Foreman because they had not lived with Foreman in over five years, Foreman had not utilized any of the services offered to her, Foreman lacks housing and employment, and Foreman has ongoing issues with drugs. Tr. 139-42. After consideration of all of the information known to her, Fogt recommended that the Agency's motion for permanent custody be granted so that the children could have permanency. Tr. 134-36.

{¶22} Foreman testified on her own behalf. She testified that she had not attended the counseling because she could not afford it. Tr. 145. She indicated that she had an appointment on September 11, 2017, but did not know the name of the psychiatrist. Tr. 145, 150. Foreman also testified that she had applied online for 15 jobs since April, but brought nothing to prove that she was doing so. Tr. 146, 151. Foreman admitted that she had not been to the jobs center. Tr. 151. Foreman testified that she was unable to attend the monthly meetings because they were scheduled in the mornings, but she did not have transportation until in the afternoon.

Tr. 147. On cross-examination, Foreman admitted that she had not told anyone at the Agency that she needed the team meetings to be later in the day rather than in the morning. Tr. 151. As for her medical condition, Foreman testified that she was in and out of the hospital with a cyst on her ovaries. Tr. 148. She was admitted to the hospital on July 13, 2017, and underwent surgery the next day to have the ovary removed. Tr. 148. She was released from the hospital on July 15, 2017. Tr. 148. Foreman testified that she was unable to supply the Agency with medical records because she lacked the funds to pay for copies. Tr. 149. In regards to her drug addiction, Foreman admitted that she used cocaine in May, but claimed it was a bad choice and that she would not use drugs if she was around her children. Tr. 153. However, she also stated that she had not sought any drug counseling since 2012 and had not been to NA in "quite a few months". Tr. 154-55, 161. Foreman admitted that when things got difficult, she turned to drugs. Tr. 162. Foreman also admitted that she had not completed anything on the case plan. Tr. 157.

{¶23} The trial court filed its judgments on September 25, 2017. 1Doc. 135, 2Doc. 130, and 3Doc. 131. The trial court granted the Agency's motion for permanent custody and terminated the parental rights of Lhamon and Foreman. *Id.* On September 29, 2017, Foreman filed her notices of appeal. 1Doc. 138, 2Doc. 133, and 3Doc. 134. Foreman raised the following assignment of error on appeal.

> **The trial court erred in granting permanent custody to [the Agency] because [the Agency] did not show by clear and convincing evidence that the children could not be placed with [Foreman] within a reasonable time.**

{¶24} The sole assignment of error argues that the Agency did not prove by clear and convincing evidence that the children could not be returned to Foreman within a reasonable time. The right to parent one's own child is a basic and essential civil right. *In re Murray*, 52 Ohio St.3d 155, 556 N.E.2d 1169 (1990). "Parents have a 'fundamental liberty interest' in the care, custody, and management of their children." *In re Leveck*, 3d Dist. No. 5–02–52, 5–02–53, 5–02–54, 2003–Ohio–1269, ¶ 6. These rights may be terminated, however, under appropriate circumstances and when all due process safeguards have been followed. *Id.* When considering a motion to terminate parental rights, the trial court must comply with the statutory requirements set forth in R.C. 2151.414. These requirements include, in pertinent part, as follows.

**(B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:**

**(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.**

-16-

\* \* \*

**(2)    With respect to a motion made pursuant to [R.C. 2151.413(D)(1)], the court shall grant permanent custody of the child to the movant if the court determines in accordance with division (E) of this section that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent and determines in accordance with division (D) of this section that permanent custody is in the child's best interest.**

**(C)  In making the determination required by this section \* \* \*, a court shall not consider the effect the granting of permanent custody to the agency would have upon any parent of the child.  A written report of the guardian ad litem of the child shall be submitted to the court prior to or at the time of the hearing held pursuant to division (A) of this section \* \* \* but shall not be submitted under oath.**

R.C. 2151.414.    A court's decision to terminate parental rights will not be overturned as against the manifest weight of the evidence if the record contains competent, credible evidence by which a court can determine by clear and convincing evidence that the essential statutory elements for a termination of parental rights have been established.  *See In re B.G.W.,* 10th Dist. Franklin No. 08AP-181, 2008-Ohio-3693 and *In re Nevaeh J.*, 6th Dist. Lucas No. L-06-1093, 2006-Ohio-6628, ¶ 17 (citing *In re Forrest S.*, 102 Ohio App.3d 338, 657 N.E.2d 307 (6th Dist. 1995)).

{¶25} The determination whether to grant a motion for permanent custody requires a two-step approach.  *In re G.B.*, 10th Dist. Franklin No. 04AP–1024, 2005–Ohio–3141, ¶ 13.  The first step is to determine whether any of the factors set

forth in R.C. 2151.414(B)(1) apply. *Id.* If one of those circumstances applies, then the trial court must consider whether granting the motion is in the best interest of the child by considering the factors set forth in R.C. 2151.414(D). *Id.*

{¶26} A review of the record in this case shows that the children had not been in the custody of the Agency for 12 out of the prior 22 consecutive months at the time the motion for permanent custody was filed as was admitted by Barlage during her testimony. Tr. 115. Thus, the trial court had to determine whether the children could be placed with Foreman within a reasonable period of time. The trial court determined that the children could not be placed with Foreman within a reasonable time based upon making a determination that R.C. 2151.414(E)(1) applied in this case.

**(E) In determining at a hearing held pursuant to division (A) of this section * * * whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines by clear and convincing evidence, at a hearing held pursuant to division (A) of this section * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:**

**(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and**

> **rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.**

R.C. 2151.414.

**{¶27}** The evidence in this case was that the children were originally removed from Foreman's home in August of 2012. Since that time, Foreman had not taken any steps to remedy the reasons for the removal. When notified of the August 2016 report, Foreman chose not to become involved instead choosing to let her mother handle the issues. The record shows that Foreman took no steps to even be listed on the case plan until after the Agency had filed the motion for permanent custody. When granted the opportunity to work the case plan and be reunified with her children, Foreman took no proactive steps and admitted that she had not completed any aspect of the case plan. In addition, she had a positive drug test for cocaine in May 2017, and refused to take the requested drug screen in August 2017. Based upon this evidence, the trial court determined that Foreman had "wholly failed to comply with or complete, in any meaningful manner, the requirements of the case plan or substantially remedy the conditions causing each of the children to be place [sic] outside the child's home within the applicable time frame." 1Doc. 135 at 12, 2Doc. 130 at 12, and 3Doc. 131 at 12. The same finding was made as to Lhamon. Given the evidence before it, this finding of the trial court was supported by clear and convincing evidence. Having made those findings pursuant to R.C.

2151.414(E)(1), the trial court was required to find that the children could not be placed with Foreman within a reasonable time.

**{¶28}** The trial court then went on to consider the best interests of the children pursuant to R.C. 2151.414(D).  1Doc. 135, 2Doc. 130, and 3Doc. 131.  The trial court indicated that it considered not only the evidence presented at the hearing, but the wishes of the children as expressed during in camera interviews.  Child 1 indicated that she wished to remain in the custody of the Agency rather than go back to Foreman.  *Id*.  Based upon all of the evidence, the trial court determined that it would be in the best interests of the children to grant the motion for permanent custody.  This conclusion is supported by competent credible evidence from which the trial court could determine by clear and convincing evidence that the essential statutory elements for a termination of parental rights have been met.  Thus, the assignment of error is overruled.

**{¶29}** Having found no error prejudicial to Appellant in the particulars assigned and argued, the judgments of the Court of Common Pleas of Shelby County, Juvenile Division, are affirmed.

*Judgments Affirmed*

**SHAW and PRESTON, J.J., concur.**

**/hls**