[Cite as *In re C.W.*, 2018-Ohio-3837.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK COUNTY

IN RE:

    C.W.,

CASE NO. 5-18-04

DEPENDENT CHILD.

[ANDRE WHITE - APPELLANT]

**O P I N I O N**

Appeal from Hancock County Common Pleas Court
Juvenile Division
Trial Court No. 20163001

**Judgment Affirmed**

**Date of Decision:  September 24, 2018**

APPEARANCES:

    *Timothy J. Hoover* for Appellant

    *Wesley R. True* for Appellee

**WILLAMOWSKI, P.J.**

{¶1} Father-Appellant Andre White ("White") brings this appeal from the judgment of the Court of Common Pleas of Hancock County, Juvenile Division, terminating White's parental rights. White alleges on appeal that the trial court abused its discretion in admitting evidence and that the judgment was against the manifest weight of the evidence. For the reasons set forth below, the judgment is affirmed.

{¶2} C.W. was born to White and Brandy Johnson ("Johnson") on July 3, 2012. Doc. 1. On January 8, 2016, the Hancock County Job and Family Services: Child Protective Services Unit ("the Agency") filed a complaint alleging that C.W. was a neglected and dependent child and sought temporary custody of the child. *Id*. Johnson was notified of the interim hearing prior to the hearing, but the record does not indicate that White received notice of that hearing until after it was complete. Doc. 8. The trial court found that there was probable cause for the removal of C.W. from the home and granted temporary custody of the child to the Agency. Doc. 4. On February 10, 2016, a case plan was filed with the court. Doc. 12. Although the case plan listed requirements and services for Johnson, White was not included in the case plan. *Id*. A Guardian Ad Litem ("GAL") was appointed for C.W. on Feb. 17, 2016. Doc. 14. White was served with notice of the adjudication hearing on January 25, 2016. Doc. 8. An adjudication hearing was held on February 18, 2016. Doc. 16. Legal counsel for White was present at the hearing, though White was not

able to attend due to his incarceration. *Id.* The complaint was amended to remove the claim for neglect and the parties agreed to admit that C.W. was a dependent child. *Id.* The GAL filed a report and recommendation with the trial court on March 9, 2016. Doc. 20. The GAL recommended that C.W. be returned to Johnson with protective supervision imposed. *Id.* The hearing on disposition was held on March 10, 2016. Doc. 23. White was present for the hearing. *Id.* After the hearing, the trial court returned C.W. to Johnson and ordered protective supervision by the Agency. *Id.* A new case plan was filed which added White as a participant and required him to 1) maintain appropriate housing, 2) complete a mental health assessment, and 3) participate in parent education. Doc. 24. The amended case plan was approved and ordered into effect by the trial court on April 4, 2016. Doc. 26. The case review occurred on April 11, 2016.[1] Doc. 29. The review indicated that as of that time, White had not complied with the case plan as the Agency had not been able to contact White to set up a home visit or schedule visitation. *Id.* White had also not completed the mental health assessment or the parenting classes at the time of the review. *Id.*

{¶3} On June 13, 2016, the Agency filed a motion for a change of disposition to temporary custody. Doc. 31. Johnson had been arrested again and C.W. had only had a couple of visits with White since being returned to Johnson's custody. Doc.

---

[1] This court recognizes that this was only one week later, so the lack of progress by White is not astonishing.

32. Therefore, the trial court granted an ex parte motion of the agency for emergency temporary custody. *Id.* A hearing was held on the motion on September 8, 2016, and White was not present. Doc. 45. The trial court then ordered that the motion be granted and gave the Agency temporary custody of C.W. *Id.* An amended case plan was then filed on September 7, 2016. Doc. 43. The amended case plan required White to 1) participate in parent education, 2) maintain safe and stable housing and allow home visits, and 3) complete a mental health assessment. *Id.* White was offered weekly visits with C.W. *Id.* The amended case plan was implemented by the trial court on September 30, 2016. Doc. 46.

{¶4} A semi-annual review was held on December 7, 2016. Doc. 51. The review indicated that White had made some progress on finding appropriate housing, but had not completed his parenting classes or mental health assessment. *Id.* The review also indicated that White was not consistent with his visits with C.W. *Id.* A three-month review was conducted on March 9, 2017. Doc. 56. This review indicated that White wanted to parent C.W., but did not feel comfortable utilizing the services offered. *Id.* The GAL filed a report on April 18, 2017, recommending that temporary custody remain with the Agency. Doc. 57. A hearing was held for the purpose of reviewing the case on April 20, 2017. Doc. 58. The trial court ordered that temporary custody remain with the Agency. *Id.*

{¶5} On May 24, 2017, the Agency filed a motion for permanent custody claiming that C.W. had been in the custody of the agency for more than 12 months

of a consecutive 22-month period and that it would be in C.W.'s best interest to terminate the parental rights of Johnson and White. Doc. 59. A case review from May 17, 2017, was also filed. Doc. 61. The review indicates that White's home appeared to be safe and free from hazards and that White had made some progress on this front. *Id.* However, White still had not participated in parent education or the mental health assessment. *Id.* Additionally, White still was not visiting with C.W. *Id.* A case review was completed on October 2, 2017. Doc. 84. The review indicated that White had "initiated case plan services" since the last review. *Id.* The review also indicated that White had started visiting with C.W., had housing, and had begun allowing the caseworker to conduct monthly home visits. *Id.* The report indicated that "some progress" had been made on this requirement. *Id.* White had also made some progress by beginning the parenting class. *Id.* Notably, White had made significant progress in completing a mental health and substance abuse assessment. *Id.* The assessment resulted in no recommendations being made for White. *Id.* A semi-annual case review was held on November 1, 2017. Doc. 86. The review noted that during the visits with C.W., White appropriately cared for and provided for the child and that he had a home, a job, and the capacity to provide for the child's basic needs. *Id.*

{¶6} On January 16, 2018, a hearing was held on the motion for permanent custody. Doc. 97. Johnson consented to the termination of her parental rights via a telephone interview by the trial court. *Id.* The Agency then presented the testimony

of three witnesses. Keshia Olague ("Olague") testified that she was a case manager at Harmony House and oversaw the visits between White and C.W. *Id*. at 16. Olague noted that on October 7, 2016, White was placed on a 30-day suspension for missing four visits in a row, but did not begin his visits again until June 9, 2017. *Id*. at 18. Her records showed that from June 2017, until November 2017, White had 25 visits scheduled, but missed 12. *Id*. at 17. From November 2017, until January 2018, White had consistently attended visits. *Id*. at 21. Olague testified that generally the visits went well with White appropriately interacting, playing, and speaking with C.W. *Id*. at 19. Olague's only issue was that White did not always correct C.W. when she behaved inappropriately by calling her father a name or swatting his arm. *Id*. at 19.

**{¶7}** Tiffany Gerken ("Gerken") testified that she had been the ongoing caseworker for C.W. since December 2016. *Id*. at 24. Gerken testified that C.W. was removed from Johnson's care for the second time in June and was not placed with White because the Agency believed he was incarcerated at the time. *Id*. at 27. The Agency filed for permanent custody of C.W. because she had been in the custody of the Agency for more than 12 out of 22 consecutive months at the time of the motion. *Id*. at 28. At the time the motion was filed, White had not been working on the case plan and had not visited or communicated with C.W. in months. *Id*.

**{¶8}** Gerken testified that the case plan had three objectives for White. The first was that White would obtain and maintain safe and stable housing. *Id*. at 31.

The first objective was sufficiently completed. *Id*. at 32. The second objective was for White to complete a parenting class. *Id*. White had successfully completed the parenting class by the time of the hearing. *Id*. at 33. The third objective was to have a mental health and substance use assessment and to comply with any recommendations. *Id*. at 33. The third objective was completed and no recommendations for any treatment were made. *Id*. at 33, 57. Gerken admitted that White had consistently visited with C.W. since August of 2017. *Id*. at 34. However, Gerken indicated that she was concerned about allowing him to have custody of C.W. due to his criminal history. *Id*. at 45, 67. In 2011, White was convicted of drug trafficking and placed on community control. *Id*. at 36-37. The community control was later revoked. *Id*. at 38. In 2014, White was convicted for theft and was sentenced to 12 months in prison. *Id*. at 39-40. In 2017, White was convicted of inducing panic and was sentenced to community control. *Id*. at 41-42. Gerken also provided copies of screen shots she had taken of White's Facebook page. Gerken testified that she observed multiple posts that caused her to suspect that White was involved in the sale of drugs. *Id.* at 46-54, 67.

{¶9} Additionally, White's other children were involved with the Agency and substantiated claims of physical abuse had been made. *Id*. at 44. Prior to August of 2017, White had almost no relationship with C.W. *Id*. at 44. Since that time, the visits had gone well. *Id*. Gerken testified that C.W. was "very bonded" with her

foster parents. *Id*. at 44. When questioned, C.W. stated she wished to live with Johnson. *Id*. at 55.

{¶10} On cross-examination, Gerken admitted that White had competed all of the requirements in the case plan before the hearing. *Id*. at 56. Gerken also admitted that despite the concerns about drugs, no requirement for drug testing were added to the case plan and no request was made for drug tests administered by probation. *Id*. at 57-58, 64. Gerken testified that she believed that the assessment would reveal concerns, but it did not do so. *Id*. at 64. Gerken also admitted that White has unsupervised visits with his other children, but she did not agree with that decision. *Id*. at 73. She indicated that she was concerned that White could be trafficking based upon the Facebook posts and the fact that she had seen other people she did not know at White's home during home visits. *Id*. at 67, 71.

{¶11} Carmen Loth ("Loth") testified that she was the supervisor of ongoing caseworkers for the Agency. *Id*. at 77. She stated her opinion that C.W. would benefit from a grant of permanent custody to the Agency. *Id*. at 78. Loth also testified that although C.W. may not be adopted by her current foster family, she would likely be adopted. *Id*. at 79.

{¶12} After the Agency rested its case, White presented no additional evidence. The GAL then took the stand and identified the Court's Exhibit 1 as her report. *Id*. at 82. She testified that after hearing all of the testimony, her opinion had not changed. *Id*. at 83. She then testified that in her opinion, C.W.'s best

interests would be served by granting the motion for permanent custody to the Agency. *Id*. at 87.

{¶13} On January 26, 2018, the trial court entered judgment granting the Agency's motion for permanent custody. Doc. 97. White filed his notice of appeal on February 1, 2018. Doc. 100. On appeal, White raises the following assignments of error.

**First Assignment of Error**

**The trial court erred and abused its discretion in admitting electronically stored information from Facebook into evidence.**

**Second Assignment of Error**

**The trial court's award of permanent custody of the child, C.W., to [the Agency] was against the manifest weight of the evidence.**

*Authentication of Evidence*

{¶14} In the first assignment of error, White argues that the trial court erred by admitting screenshots of Facebook pages into evidence. The decision to admit or exclude evidence rests within the trial court's sound discretion. *State v. McGuire*, 80 Ohio St.3d 390, 400-401, 1997-Ohio-335, 686 N.E.2d 1112. Ohio law provides a liberal standard of the authentication of evidence pursuant to Evidence Rule 901. *State v. Inkton*, 8th Dist. Cuyahoga No. 102706, 2016-Ohio-693, 60 N.E.3d 616, ¶ 73. Authentication "does not require conclusive proof of authenticity, but only sufficient foundational evidence for the trier of fact to conclude that * * * [the

evidence] is what its proponent claims it to be." *State v. Easter*, 75 Ohio App.3d 22, 25, 598 N.E.2d 845 (4th Dist. 1991).

{¶15} Gerken testified in this case that she searched Facebook for a public account for White. One of the accounts she found appeared to belong to White's three-year-old son and had a profile picture of White and a small child. Tr. at 48. Gerken testified that she took screenshots with her cell phone of what she found. *Id*. She also testified that she found an account in the name of White with a profile picture of White. Tr. at 49. Although Gerken admitted on cross-examination that she did not know who took the pictures posted on the account, the account was open to the public. Tr. at 59-60. Gerken also admitted that she did not know who had access to make posts on the account. Tr. at 61. Gerken was monitoring White's Facebook account on a weekly basis and it did play a part in her determination not to increase White's visitation. Tr. at 61-62. Although Gerken may not have provided conclusive proof that White made the posts in the screenshot, she did provide some proof that the accounts belonged to White through the profile pictures that were on the sites. White did not provide any evidence that would rebut that evidence. Thus, we find that the evidence was sufficient for the trial court to determine that the screenshots were posts from White's account. What they meant and the weight of the evidence was then for the trial court to determine. The first assignment of error is overruled.

*Manifest Weight of the Evidence*

**{¶16}** White claims in the second assignment of error that the trial court's decision to terminate his parental rights was against the manifest weight of the evidence. The right to parent one's own child is a basic and essential civil right. *In re Murray*, 52 Ohio St.3d 155, 556 N.E.2d 1169 (1990). "Parents have a 'fundamental liberty interest' in the care, custody, and management of their children." In re Leveck, 3d Dist. Hancock Nos. 5–02–52, 5–02–53, 5–02–54, 2003–Ohio–1269, ¶ 6. These rights may be terminated, however, under appropriate circumstances and when all due process safeguards have been followed. *Id.* When considering a motion to terminate parental rights, the trial court must comply with the statutory requirements set forth in R.C. 2151.414. These requirements include, in pertinent part, as follows.

> **(B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:**
>
> **\* \* \***
>
> **(b) The child is abandoned.**
>
> **\* \* \***
>
> **(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies**

**for twelve or more months of a consecutive twenty-two-month period * * *.**

**\* \* \***

**For the purposes of division (B)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to [R.C. 2151.28] or the date that is sixty days after the removal of the child from the home.**

**\* \* \***

**(C)  In making the determination required by this section \* \* \*, a court shall not consider the effect the granting of permanent custody to the agency would have upon any parent of the child.  A written report of the guardian ad litem of the child shall be submitted to the court prior to or at the time of the hearing held pursuant to division (A) of this section \* \* \* but shall not be submitted under oath.**

R.C. 2151.414.   A court's decision to terminate parental rights will not be overturned as against the manifest weight of the evidence if the record contains competent, credible evidence by which a court can determine by clear and convincing evidence that the essential statutory elements for a termination of parental rights have been established.  *In re S.L.*, 3d Dist. Shelby Nos. 17-17-17, 17-17-18, 17-17-19, 2018-Ohio-900, ¶ 24.

{¶17} The determination whether to grant a motion for permanent custody requires a two-step approach.  *In re L.W.*, 3d Dist. Marion Nos. 9-16-55, 9-16-56, 2017-Ohio-4352, ¶ 5.  The first step is to determine whether any of the factors set forth in R.C. 2151.414(B)(1) apply.  *Id.*  If one of those circumstances applies, then

the trial court must consider whether granting the motion is in the best interest of the child by considering the factors set forth in R.C. 2151.414(D). *Id.*

**{¶18}** In this case the trial court found that White had abandoned C.W.[2] A child is "presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days." R.C. 2151.011(C). The testimony of Olague was that White's visits were suspended for 30 days on October 7, 2016, but he did not resume visiting with C.W. until June 9, 2017. Tr. 18. Even excluding the 30 days of the suspension, more than 90 days had passed before visits were resumed. Thus, the evidence supports the trial court's finding that White had abandoned C.W.

**{¶19}** Once a finding is made under 2151.414(B)(1), the trial court must then consider the best interests of the child. The trial court specified that it had considered the statutory factors set forth in R.C. 2151.414(D). Specifically, the trial court made the following finding.

> **In determining the best interest of the child, the Court has considered all relevant factors included in [R.C. 2151.414(D)(1-5)], and [R.C. 2151.414(E)(7-11)], and the Court has considered the relationship of the child with her parents, relatives, foster parents, out-of-home providers and other people who may significantly affect the child's need for legally secure permanent placement, and the probability that this type of placement cannot be achieved without granting permanent custody to [the Agency].**

---

[2] The trial court also found that C.W. had been in the custody of the Agency for 12 out of 22 months. The method of calculating that time is set forth in R.C. 2151.414. Using the date of adjudication, which is the earlier of the two dates authorized by the statute, C.W. was in the custody of the Agency for 362 days.

**The Court further has considered the custodial history of the child. The child is bonded to her foster family who is also a relative. The Court has considered the child's wishes, the custodial history as outlined above and the fact that the child is in need of a legally secure permanent placement which according to the caseworker is not achievable without the granting of permanent custody.**

Doc. 97 at 4. The testimony presented at the trial provides competent and credible evidence in support of the trial court's conclusion that the termination of parental rights would be in CW.'s best interest. Viewing the evidence, this court finds that the termination of White's parental rights and the grant of permanent custody of C.W. to the Agency was supported by clear and convincing evidence. The second assignment of error is overruled.

{¶20} Having found no prejudicial error in the particulars assigned and argued, the judgment of the Court of Common Pleas of Hancock County, Juvenile Division, is affirmed.

*Judgment Affirmed*

**ZIMMERMAN and PRESTON, J.J., concur.**

**/hls**