[Cite as *In re F.R.-C.*, 2024-Ohio-5156.]

## IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

IN RE:                                                    CASE NO. 9-24-03

    F.R.-C.,

ADJUDICATED DEPENDENT CHILD.

                                                        O P I N I O N

[PETRA R. - APPELLANT]

---

**Appeal from Marion County Common Pleas Court**
**Family Division**
**Trial Court No. 2022 AB 0100**

**Judgment Affirmed**

**Date of Decision:  October 28, 2024**

---

**APPEARANCES:**

    *W. Joseph Edwards* **for Appellant**

    *Raymond A. Grogan Jr.* **for Appellee**

**WILLAMOWSKI, P.J.**

{¶1} Mother-appellant Petra R. ("Mother") brings this appeal from the judgment of the Court of Common Pleas of Marion County, Family Division granting the motion for permanent custody filed by Marion County Children Services Board ("the Agency"). On appeal, Mother claims that the trial court's judgment granting permanent custody to the Agency was against the manifest weight of the evidence. For the reasons set forth below, the judgment is affirmed.

{¶2} F.R.-C. was born in 2022 to Mother and Ronald C. ("Father"). The Agency removed F.R.-C. from the home on June 10, 2022 and emergency custody of F.R.-C. was granted to the Agency on June 13, 2022. On June 21, 2022, the Agency filed a complaint alleging that F.R.-C. was a dependent child. The basis for the complaint was Father's drug usage and the deplorable conditions of the home. On June 28, 2022, the trial court appointed a guardian ad litem for F.R.-C. The Agency requested a competency evaluation of Mother to "help clarify some problems that have existed with the family." The Agency then filed a case plan which the trial court ordered be implemented. The case plan required Mother to 1) complete an alcohol and substance use assessment, 2) comply with any and all treatment recommendations as a result of the assessment, 3) refrain from using illegal substances or alcohol, 4) submit to random drug screens, 5) compete a mental health assessment and follow the recommendations, 6) complete a parenting class, 7) sign all necessary releases, 8) maintain appropriate housing, and 9) allow a

caseworker to conduct home visits. An adjudicatory hearing was held on August 23, 2022 before a magistrate. The magistrate found F.R.-C. to be a dependent child and set the matter for a disposition hearing. The trial court adopted the magistrate's adjudicatory recommendation on September 13, 2022. The disposition hearing was held on September 22, 2022, before a magistrate. The magistrate then recommended that temporary custody of F.R.-C. be awarded to the Agency. The trial court adopted the magistrate's dispositional recommendation on November 21, 2022.

{¶3} On November 23, 2022, a semi-annual administrative review was conducted by the Agency. The review indicated that Mother had obtained an apartment and was employed. The review also noted that Mother had been regularly attending visits, but needed to show her ability to maintain a household on her own. At that time, the Agency determined that Mother had made insufficient progress.

{¶4} A second semi-annual administrative review was conducted on May 24, 2023. The review indicated that Mother had completed a competency evaluation which revealed an intellectual disability with an IQ of 66, which "is in the extremely low range of functioning". Doc. 47. Mother had refused services to assist with employment. Mother was not entitled to receive services from the MRCDD due to being diagnosed after the age of 22. The Agency noted that Mother continued to be in contact with Father, who was in prison. The Agency determined that Mother had made some progress on her case plan.

{¶5} On August 28, 2023, the Agency filed a motion for permanent custody of F.R.-C. The Agency based its request on the fact that the child had been in the temporary custody of the Agency for twelve or more months in a consecutive 22-month period and that the child could not be placed with either parent within a reasonable time. The GAL filed her report on October 26, 2023. The GAL noted concerns with Mother's income, her ability to properly care for the child and Mother's competency. The GAL determined that she did not believe Mother was "capable of safely and adequately caring for a child." Doc. 64. As a result, the GAL recommended that the Agency's motion for permanent custody be granted.

{¶6} On November 1, 2023, the Court Appointed Special Advocate ("CASA") filed her report. The CASA noted that although Mother clearly loved F.R.-C. and wanted custody of the child, it was not in the child's best interest. The CASA raised concerns with Mother's ability to protect herself and the child as she was too trusting and easily manipulated. The CASA noted that Mother has "difficulty comprehending basic explanations" that that Mother struggles to properly care for the child during visits. Doc. 65. The Casa was also worried about Mother's housekeeping after a home visit revealed carpet covered in debris, trash overflowing, and an unpleasant odor.

{¶7} On November 7 and 8, 2023, the trial court held a hearing on the motion for permanent custody. On January 5, 2024, the trial court entered a judgment finding that F.R.-C. had been in the temporary custody of the Agency for more than

twelve months in the consecutive twenty-two months prior to the filing of the motion for permanent custody. The trial court also found that the Agency had made reasonable efforts to reunify the child with Mother. The trial court then specifically addressed the best interest factors set forth in R.C. 2151.414(D)(1). Based upon all of this information, the trial court determined that it would be in F.R.-C.'s best interest to terminate Mother's parental rights and award permanent custody to the Agency. Mother appealed from this judgment. On appeal she raises the following assignment of error.

> **The trial court abused its discretion in granting permanent custody to [the Agency] and the decision was against the manifest weight of the evidence.**

{¶8} The sole assignment of error challenges the trial court's decision granting the motion for permanent custody. The right to parent one's own child is a basic and essential civil right. *In re Murray*, 52 Ohio St.3d 155 (1990). "Parents have a 'fundamental liberty interest' in the care, custody, and management of their children." *In re Leveck*, 2003–Ohio–1269, ¶ 6 (3d Dist.). These rights may be terminated, however, under appropriate circumstances and when all due process safeguards have been followed. *Id*. When considering a motion to terminate parental rights, the trial court must comply with the statutory requirements set forth in R.C. 2151.414. These requirements include, in pertinent part, as follows.

(B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:

* * *

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *.

* * *

For the purposes of division (B)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to [R.C. 2151.28] or the date that is sixty days after the removal of the child from the home.

* * *

(C) In making the determination required by this section * * *, a court shall not consider the effect the granting of permanent custody to the agency would have upon any parent of the child. A written report of the guardian ad litem of the child shall be submitted to the court prior to or at the time of the hearing held pursuant to division (A) of this section * * * but shall not be submitted under oath.

If the court grants permanent custody of a child to a movant under this division, the court, upon the request of any party, shall file a written opinion setting forth its findings of fact and conclusions of law in relation to the proceeding. The court shall not deny an agency's motion for permanent custody solely because the agency failed to implement any particular aspect of the child's case plan.

(D)(1) In determining the best interest of a child at a hearing held pursuant to division (A) of this section * * * the court shall consider all relevant factors, including, but not limited to, the following.

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies * * * for twelve or more months of a consecutive twenty-two month period * * *.

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

R.C. 2151.414. A court's decision to terminate parental rights will not be overturned as against the manifest weight of the evidence if the record contains competent, credible evidence by which a court can determine by clear and convincing evidence that the essential statutory elements for a termination of parental rights have been established. *In re S.L.*, 2018-Ohio-900, ¶ 24 (3d Dist.).

**{¶9}** The determination whether to grant a motion for permanent custody requires a two-step approach. *In re L.W.*, 2017-Ohio-4352, ¶ 5 (3d Dist.). The first step is to determine whether any of the factors set forth in R.C. 2151.414(B)(1) apply. *Id.* If one of those circumstances applies, then the trial court

must consider whether granting the motion is in the best interest of the child by considering the factors set forth in R.C. 2151.414(D). *Id.*

{¶10} Here, the trial court found that the child had been in the temporary custody of the Agency for more than 12 months out of a consecutive 22 month period. The trial court adopted the magistrate's adjudicatory recommendation finding the F.R.-C. to be a dependent child on September 13, 2022. The evidence was that F.R.-C. was removed from the home on June 10, 2022. Sixty days from that date would be August 9, 2022. As the August date is the earlier of the two, that date is the one to be used for the calculation. R.C. 2151.414(B)(1). The Agency filed its motion for permanent custody on August 28, 2023. Thus, at the time the motion for permanent custody was filed, F.R.-C. had been in the temporary custody of the Agency for more than 12 months. This satisfies the requirement of R.C. 2151.414(B)(1)(d).

{¶11} This then leads to the second question – whether the granting of the motion is in the best interest of the child when considering the statutory factors. The trial court specifically addressed each of these factors. In consideration of the relationships between F.R.-C. and the others in her life (R.C. 2151.414(D)(1)(a)) the trial court made the following findings. The trial court determined that Mother had attended almost all of the available visits. Mother loved F.R.-C., but they did not appear to be bonded with each other. The trial court also determined that F.R.-C. does appear to be bonded with her foster mother. These conclusions were

supported by the testimony of Antigoney Lyons ("Lyons"), who monitored the visits. Lyons testified that on several of the visits the foster mother needed to stay in the room so that F.R.-C. would calm down and the visit could occur. Lyons also testified that in the more recent visits, Mother interacted less with F.R.-C., instead choosing to observe the child playing independently. Lyons identified Exhibit 2 as the Summary of Visitation. The summary noted numerous instances when the child did not want to interact with Mother. The summary also noted that the foster mother was successfully able to calm F.R.-C. when F.R.-C. was upset and that F.R.-C. sometimes cried when the foster mother left her with Mother. Additionally, Tina Boutwell ("Boutwell"), the caseworker for F.R.-C., testified that the child and the foster mother are "very well bonded". Tr. 255.

{¶12} Next the trial court addressed the wishes of the child. R.C. 2151.414(D)(1)(b). Since the child was too young to express her wishes, the trial court had to rely upon the determinations of the GAL and the CASA. Both recommended that although Mother loved F.R.-C., it would be in the child's best interest for the Agency's motion for permanent custody to be granted.

{¶13} The third factor to be considered is the custodial history of the child. R.C. 2151.414(D)(1)(c). As discussed above, the child had been in the temporary custody for over 12 consecutive months. Mother testified that the child had been in her custody for approximately one month before she was removed. Thus, the great majority of the child's life was spent in the temporary custody of the Agency.

**{¶14}** Next, the trial court looked at F.R.-C.'s need for a legally secure permanent placement. R.C. 2151.414(D)(1)(d). The trial court found that given the child's young age, she was in need of a legally secure placement. The trial court also determined that a legally secure placement was not possible without a grant of permanent custody. Boutwell testified that F.R.-C. needed permanency and a safe and stable place to grow up so that she can develop appropriately. According to Boutwell, Mother lacked the financial stability and the ability to provide a safe and stable home. Boutwell indicated that Mother was not in a position to parent F.R.-C. Boutwell testified that Mother lacked the "protective capacity as needed to provide for protection and basic needs and daily care." Tr. 256.

**{¶15}** The final statutory factor is whether any of the factors listed in R.C. 2151.414(E)(7) to (11) apply. R.C. 2151.414(D)(e). The trial court specifically found that none of those factors applied.

**{¶16}** Based upon all the testimony presented and applying it to the statutory factors, the trial court determined that it would be in the best interest of F.R.-C. to terminate Mother's parental rights and grant permanent custody to the Agency. A review of the record shows that there was competent, credible evidence to support the findings of the trial court. As such, this Court does not find the trial court's judgment to be against the manifest weight of the evidence. The assignment of error is overruled.

**{¶17}** Having found no error prejudicial to the Appellant in the particulars assigned and argued, the judgment of the Court of Common Pleas of Marion County, Family Division, is affirmed.

*Judgment Affirmed*

**ZIMMERMAN and MILLER, J.J., concur.**

**/hls**