[Cite as *In re H.S.*, 2023-Ohio-3210.]

**IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
HANCOCK COUNTY**

IN RE:                                                    CASE NO. 5-23-02

    H.S.,

**ADJUDGED DEPENDENT CHILD.**

                                        **O P I N I O N**

**[MATTHEW S. - APPELLANT]**

**Appeal from Hancock County Common Pleas Court
Juvenile Division
Trial Court No. 20213025**

**Judgment Affirmed**

**Date of Decision:  September 11, 2023**

**APPEARANCES:**

    *Alison Boggs* **for Appellant**

    *Emil G. Gravelle III* **for Appellee**

**WILLAMOWSKI, J.**

{¶1} Appellant Matthew S. ("Father") brings this appeal from the judgment of the Court of Common Pleas of Hancock County, Juvenile Division terminating his parental rights. Father argues on appeal that 1) the trial court's judgment was against the manifest weight of the evidence, 2) the Hancock County Child Protective Services Unit ("the Agency") failed to use reasonable case planning or make diligent efforts to reunify Father with H.S., 3) the trial court abused its discretion in finding Father abandoned H.S., 4) the Guardian Ad Litem ("the GAL") failed to act in the child's best interests, 5) the trial court erred when it did not grant an extension, and 6) the trial court erred when it failed to allow Father to participate in the hearing, either in person or by zoom. For the reasons set forth below, the judgment is affirmed.

{¶2} Father and Constance S. ("Mother") are the parents of H.S., born in 2017. On April 28, 2021, the trial court granted an ex parte request removing H.S. from the home of paternal aunt ("Aunt"). This occurred after Mother gave birth at the beginning of April 2021 to H.S.'s sibling who tested positive for tramadol and fentanyl. Mother indicated that she had used the drugs out of state and that H.S. had been living with Father and Aunt. A caseworker went to Aunt's home and found no safety concerns, determining at that time that Father and Aunt were appropriate caregivers. The caseworker then conducted a drug screen on Father. The drug screen later came back positive for tramadol and fentanyl. The caseworker then had

Father leave the home with Aunt keeping H.S. in the home. The caseworker did not see any issues with the home or H.S. at that time.

{¶3} On April 26, 2021, the Agency conducted a drug screen on Aunt. The caseworker found no issues with the home or H.S. at that time. Aunt's drugs screen came back positive for THC. The Agency attempted to locate other caregivers, but could not. As a result, the Agency requested an ex parte order to remove H.S. from the home and place her in the emergency temporary custody of the Agency, which was granted.

{¶4} An adjudicatory hearing was held on June 17, 2021. The parties agreed that H.S. was a dependent child. A hearing as to disposition was held on July 8, 2021. The trial court placed H.S. in the temporary custody of the Agency. The trial court adopted the case plan filed by the Agency on July 8, 2021. The case plan required Father to participate in drug counseling and to learn to cope with stressors in a healthy way. The plan also required Father to submit to random drug tests. The trial court appointed the GAL on October 14, 2021.

{¶5} A semi-annual review of the case plan was conducted on October 26, 2021. That report indicated that Father had failed to comply with testing requirements and that he had made insufficient progress. On March 2, 2022, the GAL that had been appointed in October was replaced with a different one. The GAL filed her report and recommendations on March 23, 2022. The GAL noted that Father had made no progress on the case plan, but that H.S. wished to return to

Father.  The GAL noted that Father was attending supervised visitations with H.S. The GAL recommended that H.S. remain in the temporary custody of the Agency.

{¶6} The Agency completed a second semi-annual review on March 29, 2022.  In that review, the Agency noted that Father had continued to visit with H.S. and was making some progress on the case plan.  The Agency recommended that temporary custody of H.S. remain with the Agency.  On April 5, 2022, the trial court granted a six month extension as requested by the Agency.

{¶7} On June 10, 2022, the Agency filed a motion for the trial court to approve the amended case plan, which the trial court granted.  The new case plan required Father to 1) engage in substance abuse counseling and 2) obtain a safe and stable home upon release from incarceration.

{¶8} On July 19, 2022, the Agency filed a motion for permanent custody of H.S.  The motion indicated that it would be in the best interest of H.S. to be placed with the Agency permanently and that H.S. had been in the temporary custody of the Agency for twelve out of the prior consecutive twenty-two months.  On August 2, 2022, Father filed a pro se motion to be permitted to participate in the hearing via zoom as he was in the Worth Center.[1]  A new GAL was appointed in the case on August 26, 2022.

---

[1] The WORTH Center is a Community Based Correctional Facility used as an alternative to the penal system to provide residents the opportunity to change behaviors by offering individualized treatment for substance abuse to offenders.

{¶9} On October 5, 2022, a semiannual administrative review of the case plan was completed. The review noted that Father was currently incarcerated and did not have appropriate housing. The review also noted that Father had been incarcerated again as of September 28, 2022, and was facing a 17 month jail sentence. This led to a conclusion that Father had made insufficient progress towards the goal of stable housing. Father had made some progress towards addressing his addiction issues while he was incarcerated at the Worth Center.

{¶10} On November 4, 2022, the GAL filed his report. The GAL stated that he had reviewed all pleadings and the case plan. The GAL visited with H.S. and spoke with the caseworker. The GAL indicated that he attempted to contact Mother, but does not indicate any attempt to speak with Father. The GAL reported that Father had been living with his mother, but was currently incarcerated with an expected release date of February 23, 2024. The GAL noted that Father had not visited with H.S. since May of 2022. Based upon Mother's and Father's failures to complete the case plan, the GAL recommended that the Agency's motion for permanent custody be granted.

{¶11} On January 23, 2023, Father filed a motion to appear virtually to participate in the proceedings. The trial court granted the motion for a virtual appearance.

{¶12} The trial court held the permanent custody hearing on November 14, 2022 and January 26, 2023. The Agency presented the testimony of three witnesses.

The first witness was Keshia Olague ("Olague") who is the program coordinator for Harmony House. Olague testified that Father used Harmony House's visitation services to visit with H.S. Olague identified Exhibit 2 as the record of Father's visits with H.S., which started in June of 2021 and ended in May of 2022. The visits ended when Father went to the Worth Center. Once Father was released in August of 2022, Father attempted to get back on the schedule, but was unable to attend a visit before he was incarcerated again.

{¶13} Ashley Prater ("Prater") testified that she was the ongoing caseworker in this case since February of 2022. Prater testified that H.S. had remained in the temporary custody of the Agency since the child was removed from the home. The original case plan required Father to complete substance use counseling. Later Father was required to maintain safe and stable housing as well. The case plan also provided for visitation between Father and H.S. Prater testified that Father was "very minimally compliant with any of his substance use services and referrals, as well as he had not obtained any safe and stable housing for reunification." At the time of the hearing, Father was incarcerated with an expected release date in February 2024. According to Prater, Father kept her informed where he could be found, but he had no home of his own and tended to bounce between living with friends and his mother. Prater testified that, in her opinion, Father had not made significant progress on the case plan. Prater indicated that due to Father's

incarceration, he would not be able to provide the needed permanency and stability for H.S.

**{¶14}** On cross-examination, Prater admitted that much of her testimony was not based upon first-hand knowledge, but rather a review of the records. Prater also admitted that she had not contacted Father since September 2022 because she could not call him at the prison. She did not attempt to contact him via mail. Prater indicated that she did not personally observe any of the visits between Father and H.S. The last drug test completed of Father was in September of 2022 and Father was negative for all substances.

**{¶15}** Kelli Miller ("Miller") testified that she is the ongoing supervisor at the Agency since June of 2022. Miller is trained as an adoption assessor. Miller testified that if the trial court were to grant the motion of the Agency for permanent custody, H.S. would be adopted by the foster parents, who were already approved as adoptive parents.

**{¶16}** Following the witnesses of the Agency, the GAL took the stand. The GAL was asked if he had ever met Father. The GAL indicated he had not.

**{¶17}** On January 26, 2023, the trial court entered judgment granting the Agency's motion for permanent custody. In reaching its conclusion the trial court determined that although Father was minimally compliant with the substance abuse treatment, he was "unable to demonstrate any success due to repeated incarcerations." The trial court then addressed the factors under R.C. 2151.414(E).

The trial court held that the case plan was reasonably calculated to correct the reasons for the removal and Father had failed to remedy the conditions that resulted in the removal. R.C 2151.414(E)(1). Father's chemical dependency prevented him from providing an adequate home for H.S. R.C 2151.414(E)(2). The court also found that Father's choices regarding illegal activity causing his incarcerations displayed his lack of commitment toward H.S., thus showing an unwillingness to provide an adequate home. R.C. 2151.414(E)(4). Father had gone multiple stretches of time with no visitations due to repeated incarcerations causing him to abandon H.S. R.C. 2151.414(E)(10). Father's repeated incarcerations prevented him from providing care for H.S. R.C. 2151.414(E)(13). Additionally, the trial court determined that H.S. had been in the temporary custody of the Agency since June 17, 2021, and the motion for permanent custody was filed on July 19, 2022. Thus, the Agency had temporary custody of H.S. for more than 12 months of the preceding 22 months. R.C. 2151.14(B)(1)(d).

{¶18} Based upon all of the prior reasons, the trial court proceeded to determine whether granting the Agency's motion was in the best interest of H.S. The trial court then addressed the factors set forth in R.C. 2151.414(D). The trial court determined that H.S. had been in the same foster home since April 28, 2021, was bonded with the foster parents, and was thriving in their care. R.C. 2151.414(D)(1)(a). The trial court noted that H.S. appeared to have no relationship with Father. The GAL testified that H.S. indicated she wished to remain with the

foster parents. R.C. 2151.414(D)(1)(b). H.S. was in the temporary custody of the Agency for more than 12 months. R.C. 2151.414(D)(1)(c). Testimony was given by Miller and Prater that H.S. needed a legally secure and permanent placement, which cannot be achieved without granting the motion for permanent custody. R.C. 2151.414(D)(1)(d). The trial court then determined that granting the motion for permanent custody was in the best interest of H.S.

{¶19} Father filed a timely notice of appeal from this judgment. On appeal, Father raises the following assignments of error.

### First Assignment of Error

**The trial court's decision granting permanent custody was against the manifest weight of the evidence and amounted to an abuse of discretion.**

### Second Assignment of Error

**The Agency failed to use reasonable case planning and diligent efforts to reunify [Father] with [H.S.]**

### Third Assignment of Error

**The trial court abused its discretion when it found [Father] abandoned his child, contrary to the definition of abandonment as contemplated by the statute.**

### Fourth Assignment of Error

**The [GAL] failed to perform necessary duties pursuant to [R.C. 2151.281] and Superintendent Rule 48, thereby not acting in the child's best interest.**

**Fifth Assignment of Error**

**The trial court erred when it did not grant the oral motion to extend the case for an additional six months.**

**Sixth Assignment of Error**

**The trial court erred when it failed to consider [Father's] pro se request to appear by zoom, and the subsequent request by his counsel to be conveyed to the hearings that occurred after the initial request.**

In the interest of clarity, the assignments of error will be addressed out of order.

*Reasonable Case Planning & Efforts to Reunify*

{¶20} Father alleges in his second assignment of error that the Agency failed to use reasonable care when making the case plan and did not diligently pursue reunification.

> A)(1) Except as provided in division (A)(2) of this section, at any hearing held pursuant to section 2151.28, division (E) of section 2151.31, or section 2151.314, 2151.33, or 2151.353 of the Revised Code at which the court removes a child from the child's home or continues the removal of a child from the child's home, the court shall determine whether the public children services agency or private child placing agency that filed the complaint in the case, removed the child from home, has custody of the child, or will be given custody of the child has made reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home. The agency shall have the burden of proving that it has made those reasonable efforts.

R.C. 2151.419. "Case plans are the tools that child protective service agencies use to facilitate the reunification of families who * * * have been temporarily separated." *In re Evans*, 3d Dist. Allen No. 1–01–75, 2001–Ohio–2302,

*3. "Agencies have an affirmative duty to diligently pursue efforts to achieve the goals in the case plan." *In re A.M.A.*, 3d Dist. Crawford No. 3-13-02, 2013-Ohio-3779, ¶ 29. However, this does not mean that there was nothing more that the Agency could have done, but rather that the Agency's case plan and efforts were reasonable and diligent under the circumstances of the case before the Agency. *Id.* The question of whether an Agency has made reasonable efforts towards reunification is reviewed under an abuse of discretion standard. *In re A.M.*, 3d Dist. Marion No. 9-14-46, 2015-Ohio-2740, ¶ 24. "An abuse of discretion means an unreasonable, arbitrary, or unconscionable action." *State ex rel. Cincinnati Enquirer v. Sage*, 142 Ohio St.3d 392, 2015-Ohio-974, ¶ 35, 31 N.E.3d 616. A trial court's decision will not be disturbed on appeal if the record "contains competent, credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established." *In re T.S.*, 2d Dist. Greene No. 2016-CA-26, 2017-Ohio-482, ¶ 6, 85 N.E.3d 225.

{¶21} In this case, the facts presented were that Father had a substance abuse issue. A review of the record shows that Father initially tested positive for multiple substances, including fentanyl. On one occasion, Father refused to submit to a drug screen as ordered by the trial court. Father was incarcerated and placed in the Worth Center for addiction treatment from May to August 2022. The case plan recognized this issue and required father to seek substance abuse counseling. The Agency

recognized that Father had made some progress on this part of the plan as his last drug screen prior to his latest incarceration was negative for any illegal substances. However, Father's repeated incarcerations prevented the Agency from being able to determine if Father was actually making progress or if it was merely a consequence of his being incarcerated.

**{¶22}** Additionally, Father lacked stable housing as he moved from home to home on a regular basis and was incarcerated at the time of the permanent custody hearing. The record shows that Father was not due to be released until February 2024, more than 12 months after the hearing dates. The testimony showed that once Father was released, he did not have a home to which he would return.

**{¶23}** The trial court specifically found on multiple occasions that the Agency made reasonable efforts to reunify H.S. with Father by offering services including visitation, safety plans, ICPC home studies, referrals for substance abuse treatment, referrals for rehabilitation facilities, family dependency treatment court referrals, case management and PRC funds referrals. Prater's testimony supports these findings.

> A. The [A]gency has attempted safety plans. We have completed ICPC home studies. We have mde referrals to agencies, such as substance use disorder counseling services, rehab facilities, as well as family dependency treatment court for [Father].
>
> Q. And do you know if [Father}, I guess, engaged then with family dependency treatment court?
>
> A. He did not.

Q. Okay. Any other reasonable efforts the [A]gency made?

A. Case management services with meeting [sic] with the [A]gency monthly.

Q. Or at least your attempts to meet with them?

A. Yes.

Tr. 73. Given that the record contains competent, credible evidence to support the trial court court's decision, we cannot find that the trial court abused its discretion in finding that the Agency had made reasonable efforts to reunify H.S. and Father. For this reason, the second assignment of error is overruled.

*Termination of Parental Rights*

{¶24} Father claims in the first assignment of error that the trial court's decision to terminate his parental rights was against the manifest weight of the evidence. In the related third assignment of error, Father claims that the trial court erred by finding he abandoned H.S. Since the two assignments of error are related, we will address them together.

{¶25} The right to parent one's own child is a basic and essential civil right. *In re Murray*, 52 Ohio St.3d 155, 556 N.E.2d 1169 (1990). "Parents have a 'fundamental liberty interest' in the care, custody, and management of their children." *In re Leveck*, 3d Dist. No. 5–02–52, 5–02–53, 5–02–54, 2003–Ohio– 1269, ¶ 6. These rights may be terminated, however, under appropriate circumstances and when all due process safeguards have been followed. *Id*. When

- 13 -

considering a motion to terminate parental rights, the trial court must comply with

the statutory requirements set forth in R.C. 2151.414. These requirements include,

in pertinent part, as follows.

> (B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
>
> (a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, * * * and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
>
> * * *
>
> (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *.
>
> * * *
>
> For the purposes of division (B)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to [R.C. 2151.28] or the date that is sixty days after the removal of the child from the home.
>
> * * *
>
> (C) In making the determination required by this section * * *, a court shall not consider the effect the granting of permanent custody to the agency would have upon any parent of the child. A written report of the guardian ad litem of the child shall be submitted to the court prior

to or at the time of the hearing held pursuant to division (A) of this section * * * but shall not be submitted under oath.

If the court grants permanent custody of a child to a movant under this division, the court, upon the request of any party, shall file a written opinion setting forth its findings of fact and conclusions of law in relation to the proceeding. The court shall not deny an agency's motion for permanent custody solely because the agency failed to implement any particular aspect of the child's case plan.

(D)(1) In determining the best interest of a child at a hearing held pursuant to division (A) of this section * * * the court shall consider all relevant factors, including, but not limited to, the following.

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies * * * for twelve or more months of a consecutive twenty-two month period * * *.

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

R.C. 2151.414. A court's decision to terminate parental rights will not be overturned as against the manifest weight of the evidence if the record contains competent, credible evidence by which a court can determine by clear and

convincing evidence that the essential statutory elements for a termination of parental rights have been established. In re S.L., 3d Dist. Shelby Nos. 17-17-17, 17-17-18, 17-17-19, 2018-Ohio-900, ¶ 24.

{¶26} The determination whether to grant a motion for permanent custody requires a two-step approach. *In re L.W.*, 3d Dist. Marion Nos. 9-16-55, 9-16-56, 2017-Ohio-4352, ¶ 5. The first step is to determine whether any of the factors set forth in R.C. 2151.414(B)(1) apply. *Id.* If one of those circumstances applies, then the trial court must consider whether granting the motion is in the best interest of the child by considering the factors set forth in R.C. 2151.414(D). *Id.*

{¶27} Here, the trial court found that factors under R.C. 2151.414(B)(1)(a) and (B)(1)(d) applied. Father specifically challenges the finding that he abandoned H.S. "[A] child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days." R.C. 2151.011(C). The trial court determined that Father had abandoned H.S. pursuant to R.C. 2515.414(E)(10). In support of this determination, the trial court stated that Father had "gone multiple stretches of time with no visitations due to repeated incarcerations." However, unlike with Mother, the trial court did not indicate that any of those stretches were over 90 days in duration. No evidence was presented that prior to the incarceration in the Worth Center, Father missed extended stretches of visits for more than 90 days. Testimony was given that Father began

visitation as soon as he could in 2021 and maintained it through May 4, 2022, when he was sent to the Worth Center. There is no dispute that by the time of the first hearing, more than 90 days had passed with no visits. However, the motion for permanent custody was filed on July 19, 2022, only 76 days from Father's last visit. This raises the question of whether the 90 days required for an abandonment finding had elapsed. However, we need not address the question at this time because any error would be harmless.

{¶28} The trial court need only find that one of the statutory factors set forth in R.C. 2151.414(B)(1) apply. Pursuant to R.C. 2151.414(B)(1)(d), the trial court may grant permanent custody to a movant if a child has been in the temporary custody for 12 out of the prior 22 months. Here the trial court adjudicated H.S. a dependent child on June 17, 2021. The Agency moved for permanent custody on July 19, 2022. At that time, H.S. had been in the temporary custody for 13 consecutive months. The trial court made a finding that the Agency had met the factor under R.C. 2151.414(B)(1)(d) and the record supports this determination.

{¶29} Once one of the statutory factors is found, the trial court then must consider the best interest of the child as set forth in R.C. 2151.414(D). The trial court in this case specifically addressed each of the statutory factors. A review of the record shows that there is competent, credible evidence to support each of the trial court's findings concerning these factors. Thus, this court cannot find that the trial court abused its discretion. The trial court's judgment granting the Agency's

motion for permanent custody is not against the manifest weight of the evidence.

The first and third assignments of error are overruled.

*GAL Requirements*

**{¶30}** Father claims in the fourth assignment of error that the GAL did not

perform the required duties.

> The guardian ad litem for an alleged or adjudicated abused, neglected, or dependent child shall perform whatever functions are necessary to protect the best interest of the child, including, but not limited to, investigation, mediation, monitoring court proceedings, and monitoring the services provided the child by the public children services agency or private child placing agency that has temporary or permanent custody of the child, and shall file any motions and other court papers that are in the best interest of the child in accordance with rules adopted by the supreme court.

R.C. 2151.281(I). The GAL is appointed subject to the rules adopted by the

Supreme Court. R.C. 2151.281. The responsibilities of a GAL are set forth in

Sup.R. 48.03.

> Duties of the Guardian Ad Litem. Unless specifically relieved by the court, the duties of a guardian ad litem shall include, but are not limited to, the following:
>
> (1) Become informed about the facts of the case and contact all relevant persons;
>
> (2) Observe the child with each parent, foster parent, guardian or physical custodian;
>
> (3) Interview the child, if age and developmentally appropriate, where no parent, foster parent, guardian, or physical custodian is present;
>
> (4) Visit the child at the residence or proposed residence of the child in accordance with any standards established by the court;

(5) Ascertain the wishes and concerns of the child;

(6) Interview the parties, foster parents, guardians, physical custodian, and other significant individuals who may have relevant knowledge regarding the issues of the case. The guardian ad litem may require each individual to be interviewed without the presence of others. Upon request of the individual, the attorney for the individual may be present.

(7) Interview relevant school personnel, medical and mental health providers, child protective services workers, and court personnel and obtain copies of relevant records;

(8) Review pleadings and other relevant court documents in the case;

(9) Obtain and review relevant criminal, civil, educational, mental health, medical, and administrative records pertaining to the child and, if appropriate, the family of the child or other parties in the case;

(10) Request that the court order psychological evaluations, mental health substance abuse assessments, or other evaluations or tests of the parties as the guardian ad litem deems necessary or helpful to the court;

(11) Review any necessary information and interview other persons as necessary to make an informed recommendation regarding the best interest of the child.

Sup.R. 48.03(D).

**{¶31}** The GAL in this case was the third one appointed and he was appointed approximately two months before the permanent custody hearing. There is no dispute that the GAL did not have any contact with Father, either in person or by mail. The GAL testified that he did not attempt to contact Father. This is a clear violation of the rules which require GALs to meet with and interview the parties.

- 19 -

However, the failure to comply with Sup.R. 48.03 is not reversible error. *In re A.D.*, 3d Dist. Seneca No. 13-22-12, 2023-Ohio-2442, ¶ 52. Additionally, even though the GAL recommended granting the Agency's motion, the trial court was not bound by that recommendation. *Id*. at ¶ 53. The trial court knew that the GAL reached his conclusion despite not having spoken with Father and was able to take that into consideration when determining the appropriate weight to give the GAL's recommendations. For this reason, the fourth assignment of error is overruled.

*Denial of Motion for Extension of Temporary Custody*

**{¶32}** In the fifth assignment of error, Father claims the trial court erred by denying the oral request that the Agency's temporary custody be extended by six months. The decision as to whether to grant a parent's request for an extension of temporary custody rather than granting permanent custody to the Agency is one left to the discretion of the trial court. *In re C.G.*, 9th Dist. Summit No. 24097, 2008-Ohio-3773. "R.C. 2151.415(D)(1) authorizes the trial court to extend temporary custody for six months only if it finds, by clear and convincing evidence, that such an extension is in the best interest of the child and that 'there has been significant progress on the case plan of the child, and there is reasonable cause to believe that the child will be reunified with one of the parents or otherwise permanently placed within the period of extension.'" *In re W.H.*, 5th Dist. Stark No. 2015CA00120, 2015-Ohio-4361, ¶ 32.

**{¶33}** The testimony in this case was that neither Mother nor Father had made "significant progress" on the case plan. Additionally, Father would not be released from prison within the six month extension which would allow for H.S. to be returned to him. Given the evidence, the trial court did not abuse its discretion in denying the oral motion for an extension. The fifth assignment of error is overruled.

*Pro Se Request to Appear by Zoom or be Transported*

**{¶34}** Father claims in the sixth assignment of error that the trial court erred by failing to grant his request to appear by zoom or his subsequent request to be transported to the hearing from the prison. The State notes that since Father was represented by counsel, he had no right to file a pro se motion. This premise is correct. *State v. Doogs*, 3d Dist. Wyandot No. 16-19-08, 2020-Ohio-3769. However, even if Father was entitled to hybrid representation, Father's letter to the trial court requested that he be permitted to have zoom access to the August 3 pretrial hearing or a continuance. Doc. 61. The letter did not mention the hearing on the permanent custody motion. Thus no request to appear by zoom for the permanent hearing was made.

**{¶35}** Counsel for Father filed a motion to convey Father on November 10, 2022. The trial court did address this, but denied it on the grounds that there was not enough time to arrange it. Counsel then filed a motion to allow Father to appear by zoom before the second day of the hearing. The trial court granted this motion.

The trial court addressed all the motions which were properly before it and the judgments were supported by the record. The mere fact that the trial court could have chosen to do more does not result in reversible error. The sixth assignment of error is overruled.

{¶36} Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgment of the Court of Common Pleas of Hancock County, Juvenile Division is affirmed.

*Judgment Affirmed*

**WALDICK and ZIMMERMAN, J.J., concur.**

**/hls**